******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SOJOURNAL HODGES *v.* COMMISSIONER OF
CORRECTION
(AC 40652)

Lavine, Alvord and Moll, Js.

*Syllabus*

The petitioner, who had been convicted of attempt to commit robbery in
the first degree with a firearm as an accessory and conspiracy to commit
robbery in the first degree with a firearm in connection with the
attempted robbery of a store, sought a writ of habeas corpus, claiming
that his trial counsel provided ineffective assistance. The habeas court
rendered judgment denying the habeas petition, from which the peti-
tioner, on the granting of certification, appealed to this court. *Held*:

1. The habeas court properly determined that the petitioner's trial counsel
   did not render ineffective assistance:
   a. The habeas court did not err in determining that the petitioner failed
   to establish that his trial counsel was ineffective in pursuing a defense
   theory of mere presence and not contesting the petitioner's presence
   at the store at the time of the robbery; trial counsel's decision to pursue
   a mere presence defense was a reasonable strategic decision, as the
   petitioner had admitted to trial counsel, the police, and the court that
   he was present at the scene of the attempted robbery, which rendered
   an alibi defense not viable, and it would have been inconsistent with
   the defense theory that the petitioner was merely present at the scene
   and was not a participant in the robbery for trial counsel to have chal-
   lenged an eyewitness' identification of the petitioner or the presence
   of a firearm during the robbery.
   b. The petitioner failed to establish that his trial counsel rendered ineffec-
   tive assistance by failing to consult with and retain an expert witness
   in video forensics, as any such testimony challenging the quality of a
   surveillance video from the store and whether it depicted a firearm
   would not have been helpful to the petitioner in establishing trial coun-
   sel's defense that the petitioner did not participate in the attempted
   robbery; trial counsel's trial strategy was not to contest the commission
   of an attempted robbery with a firearm by an unidentified man in the
   video, as trial counsel believed that the surveillance video would aid
   the petitioner's mere presence defense because it did not show the
   petitioner doing anything that would constitute a conspiracy, and, there-
   fore, the habeas court properly concluded that trial counsel's decision
   not to call an expert witness in video forensics was based on a reasonable
   investigation and with adequate explanation.

2. The habeas court did not abuse its discretion by precluding the testimony
   of the petitioner's firearm identification expert as to whether the surveil-
   lance video depicted the presence of a firearm: because the presence
   of a firearm was an essential element of the charged crimes of attempt
   and conspiracy to commit robbery with a firearm, it was an ultimate
   issue to be decided by the jury, which had viewed the surveillance video
   and heard eyewitness testimony regarding the presence of a firearm,
   and, thus, the presence of a firearm was not the type of issue that
   required expert assistance for the jury to decide; moreover, even if trial
   counsel had attempted to introduce such evidence at the petitioner's
   criminal trial, the trial court likely would not have permitted expert
   testimony as to that ultimate issue.

Argued October 16, 2018–officially released January 22, 2019

*Procedural History*

Amended petition for writ of habeas corpus, brought
to the Superior Court in the judicial district of Tolland
and tried to the court, *Oliver, J.*; judgment denying the
petition, from which the petitioner, on the granting of
certification, appealed to this court. *Affirmed.*

*Daniel Fernandes Lage*, assigned counsel, for the appellant (petitioner).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Marc C. Ramia*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

LAVINE, J. The petitioner, Sojournal Hodges, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court (1) improperly rejected his claim that his trial counsel, Donald J. Cretella, Jr., rendered ineffective assistance and (2) abused its discretion by precluding the petitioner's expert from testifying at the habeas trial. We affirm the judgment of the habeas court.

The petitioner was charged with attempt to commit robbery in the first degree with a firearm as an accessory in violation of General Statutes §§ 53a-8, 53a-49, and 53a-134 (a) (4), and conspiracy to commit robbery in the first degree with a firearm in violation of General Statutes §§ 53a-48 and 53a-134 (a) (4). The petitioner informed Cretella that he was present at the scene. Cretella pursued a mere presence defense during the petitioner's criminal trial and attacked allegations of the petitioner's involvement in the events forming the basis for the charges. Following a jury trial, the petitioner was convicted of both charges, and the trial court, *Prescott*, *J.*, sentenced the petitioner to seven years incarceration, followed by five years special parole.

The following facts, which the jury reasonably could have found concerning the petitioner's underlying offenses, are relevant to this appeal. On June 28, 2012, at approximately 8:15 a.m., the petitioner and an unidentified man walked into Hernandez Grocery in Waterbury (store). The petitioner wore one grey glove and covered his face with a red hoodie that had a white patch. The unidentified man wore a black hoodie and asked Josean Campos, a store employee, for a single cigarette. Upon discovering that the store did not sell loose cigarettes, the two men left the store and stopped on the sidewalk. The petitioner followed the unidentified man back into the store. The unidentified man placed his right hand on the store counter, while holding a pistol on its side, and demanded that Campos give him "all the money." Campos noticed that the pistol lacked an ammunition clip and stated that he would not do so. The unidentified man stated that he was "just joking" and left the store with the petitioner following him. Campos contacted the police, who, on the basis of Campos' physical description of the petitioner and his clothes, detained the petitioner. A crime scene technician collected a surveillance video from the store, which was admitted as a full exhibit in the petitioner's underlying criminal trial.

Following his conviction, the petitioner brought a petition for a writ of habeas corpus, in which he alleged that Cretella was ineffective, inter alia, for failing to investigate and pursue a valid defense and failing to consult with experts. The habeas court, *Oliver*, *J.*,

denied the petition for a writ of habeas corpus on all counts. The petitioner then filed a petition for certification to appeal from the court's judgment, which the court granted. This appeal followed. Additional facts will be set forth as necessary.

## I

The petitioner claims that the court improperly determined that Cretella did not render ineffective assistance by (a) allegedly failing to present a competent defense and (b) declining to consult with and retain an expert witness in video forensics. We disagree.

We begin by setting forth the applicable standard of review. "The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of historical facts to questions of law that is necessary to determine whether the petitioner has demonstrated prejudice under *Strickland* [v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)], however, is a mixed question of law and fact subject to our plenary review." (Citation omitted; internal quotation marks omitted.) *Small* v. *Commissioner of Correction*, 286 Conn. 707, 717, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008).

"As enunciated in *Strickland* v. *Washington*, [supra, 466 U.S. 687,] this court has stated: It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . The claim will succeed only if both prongs are satisfied." (Internal quotation marks omitted.) *Bryant* v. *Commissioner of Correction*, 290 Conn. 502, 510, 964 A.2d 1186, cert. denied sub nom. *Murphy* v. *Bryant*, 558 U.S. 938, 130 S. Ct. 259, 175 L. Ed. 2d 242 (2009).

"[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) *Goodrum* v. *Commissioner of Correction*, 63 Conn. App. 297, 300–301, 776 A.2d 461, cert. denied, 258 Conn. 902, 782 A.2d 136 (2001).

## A

The petitioner argues that Cretella rendered ineffec-

tive assistance by pursuing a flawed defense theory of mere presence. He contends, with twenty-twenty hindsight, that Cretella failed to contest his presence at the store despite the claim that it was difficult to identify him from the video. He argues that Cretella failed to move to suppress Campos' out-of-court and in-court identifications of the petitioner and that he posed questions to Campos in the underlying criminal trial in such a manner as to concede that an attempted robbery had occurred. We are not persuaded.

The petitioner has failed to overcome the presumption that Cretella's decision to pursue a mere presence defense, and not to contest the petitioner's presence at the scene or the unidentified man's involvement in an attempted robbery, represented sound trial strategy.[1] The court credited Cretella's testimony that there was never a question that the petitioner was present at the scene and that the petitioner told Cretella that he was there. Cretella testified that he thought the petitioner's best chance for acquittal was a mere presence defense and explained that he did not believe an alibi defense was viable in light of the fact that the petitioner had admitted his presence at the scene to him, and more significantly, to the police, and to the court, *Fasano, J.*, via a letter. "The reasonableness of counsel's actions may be determined or substantially influenced by the [petitioner's] own statements or actions. " *Strickland* v. *Washington*, supra, 466 U.S. 691. Cretella's use of a mere presence defense was reasonable particularly in light of the fact that the petitioner had admitted he was present at the scene.

Cretella's theory of the defense was based on the premise that the petitioner was present at the scene but was not a participant in the attempted robbery. Cretella testified that his theory of the defense was to concede the underlying crime and argue that, even if Campos and the police were to be believed, the petitioner did not participate in the attempted robbery. Cretella further testified that he did not move to suppress Campos' out-of-court identification of the petitioner because "we weren't disputing that he was there."[2] It would not be consistent with the defense of mere presence for Cretella to have contested the petitioner's presence at the scene by challenging Campos' identifications of the petitioner. Additionally, Cretella's decision not to challenge the presence of a gun was not inconsistent with the theory of the defense, which was premised on the notion that the petitioner was not a participant in the robbery. "There is a strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than sheer neglect." (Internal quotation marks omitted.) *Harrington* v. *Richter*, 562 U.S. 86, 109, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). We conclude that the court properly determined that, in light of the surrounding circumstances, Cretella's decision to pursue a mere

presence defense was sound trial strategy and did not amount to ineffective assistance of counsel.

B

The petitioner argues that the court improperly concluded that Cretella did not perform deficiently by declining to consult with and retain an expert to provide testimony on video forensics. Specifically, the petitioner argues that the quality of the surveillance video was poor and that an expert could explain how anomalies within the video footage could make it falsely appear as if an item, such as a firearm, were present. We are not persuaded.

The following additional facts are relevant. Lindsay Hawk, a recorded evidence analyst, testified at the habeas trial that she examined the video and determined that limitations in quality existed. She testified that the video contained an anomaly called "banding," which occurred on the edge of the unidentified man's right sleeve when he placed his right hand on the store counter. Hawk further testified that there were too few frames per second causing the video to become jumpy, and opined that "you can't magically have a gun in one frame and not have it in another frame" and that "[y]ou can't just see a gun in one frame" in order for the viewer to believe that the unidentified man had a gun.

"[T]here is no requirement that counsel call an expert when he has developed a different trial strategy. . . . [T]here is no per se rule that requires a trial attorney to seek out an expert witness." (Citation omitted; internal quotation marks omitted.) *Davis* v. *Commissioner of Correction*, 186 Conn. App. 366, 379, A.3d (2018). "[T]he failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense." (Internal quotation marks omitted.) *Kellman* v. *Commissioner of Correction*, 178 Conn. App. 63, 77–78, 174 A.3d 206 (2017).

The petitioner has not shown that Hawk's testimony challenging the quality of the video would have been helpful in establishing Cretella's defense that the petitioner did not participate in the attempted robbery. Cretella testified that he thought the video supported the defense of mere presence because it showed the petitioner doing "nothing that would constitute a conspiracy." There was no allegation that the petitioner possessed a gun, and Campos provided a detailed account to the jury of the unidentified man's use of a gun. Hawk's testimony would not have been helpful to the petitioner because Cretella's strategy was not to contest the unidentified man's commission of an attempted robbery with a firearm and Cretella thought the video aided in the petitioner's defense. We conclude that the court properly concluded that Cretella's deci-

sion not to call an expert witness in video forensics was based on a reasonable investigation and with adequate explanation and, therefore, did not constitute deficient performance.

## II

The petitioner also claims that the court abused its discretion by precluding the testimony of the petitioner's firearm identification expert as to whether the video footage depicted the presence of a firearm. Specifically, the petitioner argues that his expert was to provide information based on his years of experience regarding whether a firearm was depicted in the video and that the trier of fact needed assistance in determining that issue. We are not persuaded.

The following additional facts are relevant. At the habeas trial, the petitioner sought to have Gary Barwikowski testify as an expert in firearms identification. As a foundation for his testimony, Barwikowski testified that, on the basis of his years of experience as a law enforcement officer, an officer in the United States Army, and as a firearm instructor for S.W.A.T. units, he could opine as to whether an individual's physical movements are consistent with the handling, carrying, demonstrating, displaying, sheathing, and/or brandishing of a firearm. The respondent objected. The petitioner's habeas counsel stated that Barwikowski would testify that he can determine conclusively that the unidentified man was not in possession of a firearm in the video. The court concluded that Barwikowski could not testify on the ultimate issue of whether a firearm was depicted in the video.

"The applicable standard of review for evidentiary challenges is well established. We review the trial court's decision to admit evidence, if premised on a correct view of the law . . . for an abuse of discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful. . . . [A] nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal quotation marks omitted.) *State* v. *Beavers*, 290 Conn. 386, 396–97, 963 A.2d 956 (2009).

Section 7-3 (a) of the Connecticut Code of Evidence provides: "Testimony in the form of an opinion is inadmissible if it embraces an ultimate issue to be decided by the trier of fact, except that, other than as provided in subsection (b), an expert witness may give an opinion that embraces an ultimate issue where the trier of fact needs expert assistance in deciding the issue." "An expert witness ordinarily may not express an opinion on an ultimate issue of fact, which must be decided by

the trier of fact. . . . Experts can [however] sometimes give an opinion on an ultimate issue where the trier, in order to make intelligent findings, needs expert assistance on the precise question on which it must pass. . . . Thus, expert opinion as to the ultimate issue in a case is admissible only when necessary for the trier of fact to make sense of the proffered evidence, rendering the situation . . . of such a nature as to require an expert to express an opinion on the precise question upon which the court ultimately had to pass.'' (Citation omitted; internal quotation marks omitted.) *State* v. *Beavers*, supra, 290 Conn. 414–15.

The presence of a firearm was an ultimate issue in the petitioner's underlying criminal trial. It is an essential element of the charged crimes of attempt and conspiracy to commit robbery with a firearm.[3] The presence of a firearm is not the type of issue that requires expert assistance in order for the jury to make sense of the evidence. The jury viewed the video and heard Campos' detailed testimony regarding the presence of a firearm. We are unwilling to conclude that the habeas court abused its discretion in not permitting Barwikowski to testify to this ultimate issue. Even if Cretella had attempted to introduce such evidence at the petitioner's criminal trial, it is likely that the court would not have permitted an expert to testify as to an ultimate issue. Accordingly, the habeas court properly concluded that the petitioner failed to demonstrate that Cretella rendered deficient performance when he declined to retain such an expert.

The judgment is affirmed.

In this judgment the other judges concurred.

[1] The petitioner also argues that Cretella was ineffective because he developed his defense theory prior to watching a surveillance video provided to him by the state. The petitioner cannot prevail on his argument. The court found that Cretella testified credibly that he reviewed the discovery provided by the state, which included the surveillance videotape, when he received it. We conclude that the habeas court properly determined that trial counsel's investigation was reasonable under the circumstances.

[2] The petitioner also challenges Cretella's cross-examination of Campos on the ground that it was "poor" and "misfired on exposing Campos' inconsistencies." We conclude, after a review of the relevant criminal trial transcripts, that the court properly concluded that Cretella's cross-examination of Campos "effectively exposed inconsistencies in [Campos'] testimony and supported counsel's mere presence defense," and that the petitioner failed to overcome the strong presumption that trial counsel's cross-examination tactics were reasonable trial strategy. "An attorney's line of questioning on examination of a witness clearly is tactical in nature. [As such, this] court will not, in hindsight, second-guess counsel's trial strategy." (Internal quotation marks omitted.) *Velasco* v. *Commissioner of Correction*, 119 Conn. App. 164, 172, 987 A.2d 1031, cert. denied, 297 Conn. 901, 994 A.2d 1289 (2010).

As recited in the habeas court's memorandum of decision, Cretella's cross-examination of Campos included the following exchange:

"Q. What does [the petitioner] say during that time?

"A. Nothin.

"Q. Did he ever say anything the entire time?

"A. No. . . .

"Q. Not at all?

"A. No.

"Q. You've never heard him speak ever?

"A. No.

"Q. All right. Did he ever point a gun at you?

"A. No.

"Q. Did he ever try to steal anything?

"A. No.

"Q. Did he ever tell the guy, yeah, get him?

"A. No.

"Q. Did he ever—you know, did he pat him on the butt—

"A. I didn't—

"Q.—say, nice job, go get him?

"A.—I don't know.

"Q. No, you didn't see that?

"A. I was behind the counter, I—

"Q. Did he dap him?

"A. No."

[3] Both offenses relate to the underlying substantive offense of robbery in the first degree with a firearm. General Statutes § 53a-134 (a) (4) provides in relevant part: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime of robbery as defined in section 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ."