******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* MUHAMMAD
A. QAYYUM
(AC 42456)

Bright, C. J., and Suarez and Lavery, Js.

*Syllabus*

Convicted, after a jury trial, of the crimes of conspiracy to sell narcotics
and possession of narcotics with intent to sell, the defendant appealed
to this court. *Held*:

1. The defendant could not prevail on his claim that the trial court violated
his due process rights by shifting the burdens of proof and persuasion
to him to prove that he had a legitimate source of income, which was
based on his claim that the court erred in permitting a state Department
of Labor representative, R, to testify that the defendant had no reportable
wages, thereby suggesting that he earned a living selling drugs: the
defendant's claim challenging R's testimony was evidentiary rather than
constitutional in nature; moreover, the trial court did not abuse its
discretion in admitting R's testimony and determining that the probative
value of the evidence of the defendant's lack of reportable wages out-
weighed its prejudicial effect, as that evidence was probative of whether
the defendant was engaged in trafficking drugs and was not unduly
prejudicial because R's testimony was not presented in a manner that
would have improperly aroused the emotions of the jurors; furthermore,
even if this court assumed that the trial court abused its discretion in
admitting R's testimony, any error was harmless, as the defendant failed
to satisfy his burden of proving that it was more probable than not that
the admission of the testimony substantially affected the verdict.

2. The defendant's claim that the trial court erred in admitting impermissible
expert opinion testimony from F, a police detective, on the ultimate
issue of whether the defendant intended to sell narcotics was unavailing;
that court did not abuse its discretion in admitting F's testimony, as his
testimony concerned only general factors that he would consider when
deciding to charge a person with possession of narcotics with intent to
sell, including the general behavior of drug users and drug traffickers,
and the prosecutor did not ask F for his specific opinion about whether
the defendant possessed narcotics with intent to sell, and, therefore, F
never expressed his opinion on the ultimate issue before the jury; more-
over, even if this court assumed that the trial court improperly admitted
F's testimony, the defendant failed to satisfy his burden of proving that
the admission of F's testimony more probably than not affected the
verdict and therefore was harmful.

Argued September 9—officially released December 22, 2020

*Procedural History*

Two part substitute information charging the defen-
dant, in the first part, with the crime of conspiracy to
sell narcotics and two counts of the crime of possession
of narcotics with intent to sell, and, in the second part,
with previously having been convicted of the crime of
sale of narcotics, brought to the Superior Court in the
judicial district of Litchfield at Torrington, where the
first part of the information was tried to the jury before
*Danaher, J.*; verdict of guilty; thereafter, the defendant
was presented to the court, *Danaher, J.*, on a plea of
guilty to the second part of the information; judgment
of guilty in accordance with the verdict and plea, from
which the defendant appealed to this court. *Affirmed.*

*Robert L. O'Brien*, assigned counsel, with whom, on
the brief, was *William A. Adsit*, assigned counsel, for

the appellant (defendant).

*Linda F. Currie-Zeffiro*, assistant state's attorney, with whom, on the brief, were *Dawn Gallo*, state's attorney, and *David Shannon*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, J. The defendant, Muhammad A. Qayyum, appeals from the judgment of conviction, rendered after a jury trial, of one count of conspiracy to sell narcotics in violation of General Statutes §§ 53a-48 and 21a-277 (a) and two counts of possession of narcotics with intent to sell in violation of § 21a-277 (a). On appeal, the defendant claims that the trial court (1) violated his due process rights by shifting the burdens of proof and persuasion to him to prove that he had a legitimate source of income and (2) erred by allowing impermissible expert opinion testimony regarding his intent to sell narcotics. We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our discussion. On April 12, 2017, Torrington Police Officer Matthew Faulkner went to 356 Migeon Avenue in Torrington to execute a search warrant following his investigation regarding possible drug sales being conducted from unit 1 North, the apartment of Oscar Pugh. Officer Faulkner surveilled the residence for approximately one hour. During that time, two people separately arrived at Pugh's apartment but departed quickly. Officer Faulkner also saw the defendant arrive in a dark gray Infiniti sedan bearing Massachusetts license plates, which the defendant had rented from Hertz. The defendant had rented cars from Hertz for sixty-three days during the period from January, 2017, until his arrest in April, 2017, with the rentals costing between $2500 and $2600. Officer Faulkner frequently had observed the defendant at Pugh's apartment over these preceding months.

Additional police arrived approximately one hour after Officer Faulkner began his surveillance. The police executed the search warrant and detained the defendant and Pugh. The defendant eventually admitted that he had narcotics in his front pockets, and Officer Faulkner then proceeded to search them. Inside, he found $267 in small bills, seven wax folds of heroin, and two "dubs" of crack cocaine.[1] The police did not find any drug paraphernalia on the defendant or in his rental car, but a canine officer alerted on the car's trunk and door.

The police also searched Pugh. They found six wax folds of heroin and $2 in his pockets and a single dub of crack cocaine in his sock. They also found seventeen dubs of crack cocaine in between the couch cushions where Pugh was seated, along with various items of drug paraphernalia such as crack pipes and cut straws. Additionally, they found a handwritten ledger documenting narcotics sales. Pugh admitted that the narcotics found on his person were his and that he was a heavy user, but he denied that the other narcotics in the apartment belonged to him. Other than the $2 found on Pugh's person, the police did not find any other

money within the apartment.

The defendant was charged by way of a substitute long form information with one count of conspiracy to sell narcotics in violation of §§ 53a-48 and 21a-277 (a) and two counts of possession of narcotics with intent to sell in violation of § 21a-277 (a). The defendant also was charged in a part B information with having twice been convicted of the sale of narcotics in violation of § 21a-277 (a). The defendant pleaded not guilty and elected to be tried by a jury. On August 16, 2018, a jury of six found the defendant guilty of all three counts. Later that day, the defendant pleaded guilty to the two counts of the part B information. On November 9, 2018, the court sentenced the defendant to a total effective term of twenty years of incarceration, execution suspended after twelve years, with five years of probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the trial court violated his due process rights by shifting the burdens of proof and persuasion to him. Specifically, he argues that the court erred by permitting the state to present evidence that he had no reportable wages, thereby suggesting that he earned a living selling drugs, and thus placing the burden on him to prove that he had a legitimate source of income. In response, the state argues that the defendant's challenge to the disputed testimony presents an evidentiary issue rather than a constitutional one and that the trial court did not abuse its discretion in determining that the probative value of the evidence of the defendant's lack of reportable wages was not outweighed by its prejudicial effect. We agree with the state.

The following additional facts are relevant to this claim. At trial, Pugh testified that he had known the defendant for more than one year and that the defendant had told him that he needed a place to sell drugs. Pugh further testified that, in the year preceding their arrests, the defendant would come by his apartment every few days and that he gave Pugh a reduced price for the drugs that Pugh used in exchange for using Pugh's apartment to sell drugs. Pugh saw the defendant sell drugs in his apartment but never saw the defendant use any heroin or crack cocaine.

After the first day of evidence, defense counsel informed the court that he objected to the state's anticipated presentation of testimony from David Ricciuti, a representative from the Department of Labor (department). After defense counsel questioned the relevance of such testimony, the prosecutor responded that the state intended to call Ricciuti to testify that the defendant had no reportable wages for the relevant time period prior to his arrest. In response, defense counsel

preliminarily argued that such evidence was irrelevant, not probative of any issues in the case, prejudicial, and might "play on certain biases that people hold, implicit biases as well." The court informed the parties that it would entertain argument on the issue the following morning, and the prosecutor stated his intent to rely on *State* v. *Perry*, 58 Conn. App. 65, 68–69, 751 A.2d 843, cert. denied, 254 Conn. 914, 759 A.2d 508 (2000), in support of the admissibility of Ricciuti's testimony. The next morning, defense counsel did not argue that the evidence was irrelevant. Instead, he stated that his objection was "primarily an evidentiary objection based on [the expected testimony] being overly prejudicial and more prejudicial than probative" because it did not demonstrate "an imminent financial burden on the defendant." Defense counsel argued that suggesting that someone is more likely to commit a crime because they do not have a job "inappropriately plays on biases that people may have, it fits into a stereotype and . . . runs the risk of arousing the jury's potential prejudices and implicit biases . . . ." Defense counsel conceded that the issue was not "of a constitutional magnitude," although he did argue that admitting the evidence "would also shift the burden to [the defendant] to have to rebut the evidence, [which] would be impermissible or improper . . . ." In response, the prosecutor argued that, when considered with other evidence, specifically the facts that the defendant had spent several thousands of dollars on rental cars during the months leading up to his arrest and had $267 and narcotics in his pocket, the evidence concerning his lack of reportable wages was more probative than prejudicial. In particular, the prosecutor argued that Ricciuti's testimony, coupled with the other evidence, would permit the jury to infer that the defendant's otherwise unexplained wealth came from drug trafficking. The court, relying on this court's opinion in *Perry*, overruled the defendant's objection. The court reasoned that Ricciuti's testimony was "not simply evidence . . . that the defendant does not have great resources. It's some evidence that he doesn't have a visible source of income . . . and yet he has funds to expend." The court noted that this court in *Perry* held that similar evidence was admissible and not unduly prejudicial. The court further noted that the evidence that the state sought to introduce was significantly less detailed than what was offered in *Perry* and, therefore, less prejudicial.

On direct examination, Ricciuti testified that the defendant did not have any wages in either 2016 or 2017 that were reported to the department. He acknowledged, however, that some people have "under the table jobs," for which the department would have no record. He also admitted on cross-examination that income from self-owned businesses, Social Security disability benefits, rental properties, and lottery winnings are not reportable wages.

During closing argument, defense counsel reminded the jury of Ricciuti's testimony and commented that the state had presented no testimony that it had checked to see if the defendant had other sources of income. He also emphasized that the fact that the defendant did not have any taxable wages did not necessitate a finding that he sold drugs because there are numerous types of legitimate forms of income that would not need to be reported to the department.

We now set forth our standard of review and the relevant legal principles governing this claim. "[U]nless an evidentiary ruling involves a clear misconception of the law, [t]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Internal quotation marks omitted.) *State* v. *Rosa*, 104 Conn. App. 374, 377–78, 933 A.2d 731 (2007), cert. denied, 286 Conn. 906, 944 A.2d 980 (2008).

"[E]vidence is relevant if it has a tendency to establish the existence of a material fact. . . . Relevant evidence is evidence that has a logical tendency to aid the trier [of fact] in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . .

"Although relevant, evidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury. . . . The trial court . . . must determine whether the adverse impact of the challenged evidence outweighs its probative value." (Internal quotation marks omitted.) Id., 378.

In *Perry*, this court noted: "Numerous courts have recognized that evidence of an imminent financial burden on the defendant is admissible for the purpose of proving motive. . . . Financial condition and employment status may be relevant to a defendant's motive to commit a crime and, thus, are admissible on purely nonconstitutional evidentiary grounds." (Citation omitted; internal quotation marks omitted.) *State* v. *Perry*, supra, 58 Conn. App. 68–69. The defendant argues that

*Perry* limited the admissibility of such evidence to the issue of motive and that the record shows that the state did not proffer Ricciuti's testimony for that purpose. Consequently, the defendant argues, the testimony had no probative value. Furthermore, he argues that the admission of Ricciuti's testimony impermissibly placed a burden on him to prove that he had a legitimate source for the money the state proved he had in his possession or had recently spent. We are not persuaded.

We note at the outset that defense counsel conceded that his objection to Ricciuti's proposed testimony was evidentiary in nature rather than one of constitutional magnitude. He objected to the proposed testimony only on the ground that it was more prejudicial than probative, and, although he argued briefly that admitting such testimony would impermissibly shift the burdens of proof and persuasion to the defendant, he did not suggest that doing so would violate the defendant's due process rights. Moreover, this court previously has held that evidence of a defendant's financial condition or employment status is admissible on purely nonconstitutional evidentiary grounds. See *State* v. *Perry*, supra, 58 Conn. App. 68–69; see also *State* v. *Rosa*, supra, 104 Conn. App. 376 (unpreserved claim that trial court improperly admitted evidence showing that defendant was unemployed at time of incident concerned evidentiary and not constitutional matter, and was not reviewable). The defendant's attempt to turn his evidentiary claim into a constitutional one by arguing that the admission of Ricciuti's testimony concerning his lack of reportable wages violated his due process rights by unconstitutionally shifting the burden on him to prove he had a legitimate source of income is thus unavailing.[2] "Simply [p]utting a constitutional tag on a nonconstitutional claim will no more change its essential character than calling a bull a cow will change its gender." (Internal quotation marks omitted.) *State* v. *Rosa*, supra, 377. We, thus, review the defendant's evidentiary claim concerning the admission of Ricciuti's testimony for an abuse of discretion.

As to the merits of the defendant's evidentiary claim, we conclude that the defendant misreads *Perry* and that his reliance on it is misplaced. This court did not state in *Perry* that evidence of lack of employment is relevant only to motive. We merely stated that in that case it was relevant to motive. See *State* v. *Perry*, supra, 58 Conn. App. 68–69. We see no reason why such evidence could not be relevant to other issues such as intent, or, as in this case, to assist the jury in determining whether the defendant actually was engaging in the conduct that constituted the crime. The fact that the defendant had access to money despite having no reportable wages, combined with the other evidence presented by the state, makes it more likely that he was engaged in drug trafficking to procure that money. That evidence tends to make a fact more likely is all

that is required to make the evidence relevant. As this court stated in a similar context: "Although evidence of the defendant's unemployment may [be] far from conclusive, [e]vidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree . . . ." (Internal quotation marks omitted.) *State* v. *Rosa*, supra, 104 Conn. App. 378–79. Ricciuti's testimony thus had probative value.

Furthermore, the evidence was not unduly prejudicial. Although evidence of a defendant's chronic poverty may improperly arouse the emotions of the jurors in certain circumstances, "we recognize a distinction between evidence of chronic poverty and evidence of unemployment at a relevant time, as even a well-to-do person may be unemployed at times." *State* v. *Rosa*, supra, 104 Conn. App. 379.

In the present case, the state presented evidence of the defendant's lack of reportable wages only from the year prior to his arrest through the time of his arrest. In addition, Ricciuti's testimony was very brief, and he conceded both on direct examination and on cross-examination that the defendant could have had sources of income, other than drug trafficking, that would not have been reported to the department. His testimony was not presented in a manner that improperly would have aroused the emotions of the jurors or invoked any feelings of bias, whether explicit or implicit. For these reasons, we agree with the state that the trial court acted within its discretion when it admitted Ricciuti's testimony concerning the defendant's lack of reportable wages.

Additionally, although it was not an abuse of discretion to admit Ricciuti's testimony, we further note that such admission was not harmful. "In order to establish reversible error on an evidentiary impropriety . . . the defendant must prove both an abuse of discretion and a harm that resulted from such abuse. . . . When an improper evidentiary ruling is not constitutional in nature, the defendant bears the burden of demonstrating that the error was harmful." (Citation omitted; internal quotation marks omitted.) *State* v. *Alexis*, 194 Conn. App. 162, 170, 220 A.3d 38, cert. denied, 334 Conn. 904, 219 A.3d 800 (2019). "[W]hether [an improper ruling] is harmless in a particular case depends upon a number of factors, such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Accordingly, a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict." (Internal

quotation marks omitted.) Id.

In the present case, the defendant has failed to meet his burden of demonstrating that the admission of Ricciuti's testimony concerning his lack of reportable wages was harmful. First, the state's case against the defendant was strong. Pugh testified extensively about the arrangement he had with the defendant whereby the defendant gave Pugh a reduced price for drugs in exchange for using Pugh's apartment to sell them. The state also presented evidence that drug paraphernalia was found in Pugh's apartment but that none was found on the defendant or in his rental car. Moreover, the state presented evidence that the defendant had $267 on him in small denominations, that he had seven wax folds of heroin on him along with two dubs of cocaine, that he had spent approximately $2500 on rental cars in the months leading up to his arrest, and that a canine officer twice had alerted on the defendant's rental car, indicating a residual odor of narcotics. The state, therefore, presented sufficient evidence that the jury reasonably and independently could have used to find the defendant guilty of all three charges. Second, Ricciuti's testimony was of negligible importance to the state's case. As discussed previously in this opinion, the state had a strong case, and the prosecutor referred to Ricciuti's testimony only once during his closing argument and not at all during his rebuttal argument. It, thus, cannot be said that Ricciuti's testimony was vital to the state's case. Third, the defendant had ample opportunity to cross-examine Ricciuti. Ricciuti, in fact, testified on cross-examination that income from self-owned businesses, Social Security disability benefits, rental properties, and lottery winnings were not reportable wages. In light of these considerations, even if we were to assume that the trial court abused its discretion in admitting Ricciuti's testimony, we would conclude that any error was harmless. The defendant has failed to meet his burden of proving that it was more probable than not that the admission of Ricciuti's testimony substantially affected the verdict.

## II

We next turn to the defendant's claim that the trial court erred by admitting impermissible expert opinion testimony. Specifically, he argues that the court impermissibly permitted the state's expert, Scott Flockhart, a detective in the New Milford Police Department, to opine on the ultimate issue of the case, namely, whether the defendant intended to sell narcotics. In response, the state argues that the prosecutor elicited testimony from Flockhart concerning only general factors that he would consider when deciding to charge a person with possession of narcotics with intent to sell. The state further contends that such testimony was proper because the prosecutor did not ask specifically for Flockhart's opinion about whether the defendant pos-

sessed the narcotics with the intent to sell them. We agree with the state.

The following additional facts are relevant to this claim. During trial, the state presented the expert testimony of Flockhart, who testified about his extensive experience throughout his career dealing with narcotics. During his testimony, Flockhart explained that people who traffic narcotics frequently use rental cars to avoid detection. He also testified that narcotics traffickers often enlist intermediaries in an effort to insulate themselves from the actual criminal activity.

The prosecutor then attempted to ask Flockhart a hypothetical question by asking him: "If you came across a person with two $20 bags of crack [cocaine] and seven bags of heroin . . . would you be able to say whether that person possessed those drugs to use or possessed them with an intent to sell them?" Defense counsel objected to this question on the ground that it "[went] to the ultimate issue." Outside the jury's presence, defense counsel argued that the "hypothetical mirrors the facts of the case so closely that essentially the witness [was] being asked to give an opinion on the ultimate issue in this case." The court stated that the question, as phrased, "[came] too close to asking this expert as to whether he [had] an opinion as to whether someone who's exactly situated like [the] defendant was engaged in possession of narcotics with intent to sell." The court cautioned the state to "[ask] the questions in a more general way . . . ." Shortly thereafter, the following exchange occurred between the prosecutor and Flockhart:

"Q. What type of factors do you look for, what type of things do you consider [when deciding to charge a person with possession of narcotics with intent to sell] . . . .

"A. We look [at] how the drugs are packaged [and] quantities. [We] look for paraphernalia. If somebody is an addict, they're most likely gonna have some type of paraphernalia on them.

"Q. Okay. Well, in your experience, do addicts generally, are they—are they ever far from their paraphernalia?

"A. Usually not, no.

"Q. [As] to how it's packaged, what are you looking for, specifically?

"A. Whether it's . . . broken down . . . to smaller quantities in smaller bags.

"Q. Smaller quantities would mean what, [regarding] that decision-making process?

"A. Would lead towards the possession with the intent to sell, because that's usually how it's broken up for street level distribution.

"Q. What else would you look for?

"A. You would take a look at [the person's hygiene] . . . track marks on their arms . . . [and] if they're gonna be getting dope sick.

\* \* \*

"Q. What about money, is that a consideration at all?

"A. Yes.

"Q. Could you tell the jury how that would weigh in?

"A. Most addicts when they go to buy . . . their drug of choice . . . usually [they] go with an amount of money to buy a certain amount of that drug . . . if they have $100 on [them], they aren't gonna go and buy just $20 worth. . . .

"Q. Yes or no—well, if you found a large amount of money on a person versus a negligible amount of money, how would that factor into your decision?

"A. Most addicts aren't gonna have a large amount of money. . . .

"Q. And what about the denominations of money, would that factor into your decision at all . . . ?

"A. Yes."

Defense counsel did not object to any of the questions asked in this exchange. Following cross-examination, the prosecutor elicited additional testimony from Flockhart in which Flockhart testified that he does not focus on a single factor when deciding whether to charge a person with possession of narcotics with intent to sell but, rather, that he looks at all these things in the aggregate.

"An expert witness ordinarily may not express an opinion on an ultimate issue of fact, which must be decided by the trier of fact. . . . Experts can [however] sometimes give an opinion on an ultimate issue where the trier, in order to make intelligent findings, needs expert assistance on the precise question on which it must pass." (Internal quotation marks omitted.) *Hodges* v. *Commissioner of Correction*, 187 Conn. App. 394, 404, 202 A.3d 421, cert. denied, 331 Conn. 912, 203 A.3d 1246 (2019). "A trial court has broad discretion in admitting expert testimony concerning the sale of illicit drugs." (Internal quotation marks omitted.) *State* v. *Nelson*, 17 Conn. App. 556, 565, 555 A.2d 426 (1989). For example, "[e]xpert witnesses may testify that certain behavior by a defendant or his possession of particular items is conduct similar to that engaged in by the typical drug dealer. . . . A police officer, who is qualified as an expert witness, may even testify that, in light of the officer's personal observations of his conduct, it appeared that a defendant was engaged in narcotics sales." (Citation omitted.) *State* v. *Vilalastra*, 207 Conn. 35, 45, 540 A.2d 42 (1988). It also is proper for a prosecu-

tor "to ask [a] police officer whether, in his expert opinion it is the common practice of drug sellers . . . to work with the items found. . . . An expert may give his opinion about the quantity of narcotics that a drug dealer might possess." (Citation omitted.) *State* v. *Nelson*, supra, 566.

In the present case, we agree with the state that the trial court did not abuse its discretion in admitting Flockhart's testimony.[3] During trial, Flockhart merely testified about the general behavior of drug users and drug traffickers. For example, Flockhart testified that drug users usually do not have large sums of money on them and that they are never far from their drug paraphernalia.

He also testified that, based on his experience, drug traffickers will often break down their narcotics into smaller packages to make distribution easier. Such testimony about the conduct of drug users and traffickers is entirely permissible. See *State* v. *Vilalastra*, supra, 207 Conn. 45; *State* v. *Nelson*, supra, 17 Conn. App. 566. Moreover, following defense counsel's objection, the prosecutor never asked Flockhart for his particularized opinion on the significance of the defendant's possession of money and drugs, and none of Flockhart's answers to the prosecutor's questions can be classified as an expression of his opinion on that topic. Flockhart, therefore, never expressed his opinion on the ultimate issue before the jury, namely, whether the defendant intended to sell narcotics. Accordingly, we conclude that the trial court did not abuse its discretion when it permitted Flockhart's testimony.

Furthermore, even if we were to assume that the admission of Flockhart's testimony was an abuse of discretion, the defendant again has failed to show that its admission was harmful. "The improper admission of opinion testimony that answers a question that a jury should have resolved for itself is not of constitutional significance and is a type of evidentiary error. . . . If the testimony is deemed to have answered a question that was solely for the jury's determination, the burden is on the defendant to show that the admission more probably than not affected the outcome of the verdict." (Citation omitted.) *State* v. *Wright*, 47 Conn. App. 559, 563, 707 A.2d 295, cert. denied, 244 Conn. 917, 714 A.2d 8 (1998).

Here, the state presented ample evidence independent of Flockhart's testimony from which the jury reasonably could have concluded that the defendant intended to sell the narcotics in his possession. As previously observed, Pugh testified extensively about his dealings with the defendant. Officer Faulkner also corroborated Pugh's testimony by testifying that he had observed the defendant coming and going from Pugh's apartment for months, and another police officer testified that a canine officer had alerted for drugs on the

trunk and door of the defendant's rental car. Moreover, the state presented evidence that the defendant had spent approximately $2500 on rental cars in the months leading up to his arrest, despite having no reportable income, and that the police found $267 in small bills on the defendant when they arrested him. Although the defendant argues that Pugh's testimony should be discredited because he was a compromised witness, witness credibility is solely the function of the jury, and it was well within the jury's province to find Pugh's testimony credible. See *State* v. *Michael T.*, 194 Conn. App. 598, 621, 222 A.3d 105 (2019) ("it is the [jury's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses" (internal quotation marks omitted)). Accordingly, we conclude that, even if we were to assume that the trial court improperly admitted Flockhart's testimony, the defendant has failed to meet his burden of proving that the admission of his testimony more probably than not affected the verdict.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Officer Faulkner testified at trial that a "dub" is a piece of crack cocaine weighing .2 grams.

[2] Although the state has not raised the issue of preservation, we also note that the defendant's claim that the court erred by permitting Ricciuti to testify about his lack of reportable wages in violation of his due process rights was not preserved properly. "Appellate review of evidentiary rulings is ordinarily limited to the specific legal [ground] raised by the objection of trial counsel. . . . To permit a party to raise a different ground on appeal than [that] raised during trial would amount to trial by ambuscade, unfair both to the trial court and to the opposing party." (Internal quotation marks omitted.) *State* v. *Stenner*, 281 Conn. 742, 755, 917 A.2d 28, cert. denied, 552 U.S. 883, 128 S. Ct. 290, 169 L. Ed. 2d 139 (2007). Here, defense counsel conceded that his objection to Ricciuti's testimony was evidentiary in nature, and failed to make any argument that the admission of such testimony would violate the defendant's constitutional rights. Consequently, the court ruled on the admissibility of Ricciuti's testimony on purely evidentiary grounds. The defendant's claim on appeal that the admission of such testimony violated his due process rights is thus unpreserved. See id. (holding that defendant's constitutional claim was unpreserved when defendant objected on different, evidentiary basis during trial). Although a defendant is entitled to review of an unpreserved constitutional claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), we have concluded that the defendant's claim is not constitutional in nature. Accordingly, we review the defendant's claim concerning Ricciuti's testimony on the merits of the evidentiary ground raised at trial.

[3] Although the state also has not raised the issue of preservation for this claim, we note that the defendant's claim that the trial court improperly admitted Flockhart's testimony was not preserved properly. Defense counsel objected to the prosecutor's initial line of questioning when he attempted to ask Flockhart a hypothetical that closely mirrored the facts of the case. Defense counsel, however, failed to object to the customs and behavior questions that the prosecutor asked after the court instructed him to ask his questions in a more general way. Because defense counsel failed to object to this line of questioning, the defendant's claim concerning Flockhart's testimony following his counsel's objection is unpreserved. See *State* v. *Cromety*, 102 Conn. App. 425, 430, 925 A.2d 1133 (defendant's claim concerning testimony of expert witness was unpreserved evidentiary claim that was not reviewable because defendant failed to object timely to testimony), cert. denied, 284 Conn. 912, 931 A.2d 932 (2007). Although we are not required to review unpreserved evidentiary claims; see *State* v. *Omar*, 136 Conn. App. 87, 98–99, 99 n.3, 43 A.3d 766, cert. denied, 305 Conn. 923, 47 A.3d 883 (2012); we, nevertheless, address the defendant's claim on its merits.