******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.*
MUHAMMAD A. QAYYUM
(SC 20552)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

The defendant was convicted of the crimes of conspiracy to sell narcotics
and possession of narcotics with intent to sell. Following an investigation
into possible drug sales from an apartment occupied by P, the police
executed a search warrant for the apartment, where they detained the
defendant and P. The defendant admitted to the police that he had
narcotics on his person. The police found $267 in small bills, heroin,
and crack cocaine in the defendant's front pockets. The police also
found, inter alia, heroin and crack cocaine on P's person. Inside of the
apartment, the police found more crack cocaine in between the couch
cushions where P had been sitting, as well as drug paraphernalia and
a handwritten ledger documenting narcotics sales. On appeal to the
Appellate Court, that court affirmed the trial court's judgment. There-
after, the defendant, on the granting of certification, appealed to this
court, claiming, inter alia, that the Appellate Court incorrectly concluded
that the trial court had not abused its discretion in permitting F, a
detective from another jurisdiction who had not been involved in the
investigation of the defendant's drug sales, to testify regarding the defen-
dant's intent to sell narcotics. *Held*:

1. This court declined to review the defendant's evidentiary claim regarding
whether the trial court abused its discretion when it permitted F to offer
expert testimony on the issue of whether the defendant had intended
to sell narcotics, as that claim was not properly preserved; although
defense counsel objected to the prosecutor's hypothetical question to
F regarding the significance of a person in possession of the exact
amount of drugs with which the police apprehended the defendant and
whether those circumstances would indicate an intent to sell drugs,
counsel did not object to the reformulated set of questions the prosecutor
asked F, after the trial court sustained defense counsel's objection to
the hypothetical, about the general behavior of drug dealers; accordingly,
because defense counsel failed to object to any of the prosecutor's
questions that formed the basis for the defendant's claim on appeal,
counsel had no occasion to articulate the basis for a challenge to those
questions with sufficient clarity to put the trial court on notice of such
a challenge, and the trial court, therefore, never ruled on it.

2. The defendant did not satisfy his burden of demonstrating that the trial
court's admission of the testimony of a labor department representative,
R, regarding the defendant's lack of reportable wages in the year of and
the year before his arrest, even if improper, constituted harmful error:
R's testimony, which the state adduced to demonstrate inferentially that
the defendant's income derived from drug sales rather than reportable
wages, was relatively unimportant to the state's otherwise strong case
against the defendant in view of the physical evidence, including cash
and drugs, that the police found on the defendant's person, P's testimony
about an arrangement whereby the defendant would sell drugs out of
his apartment in exchange for a discount, testimony from a police officer
who had been observing P's apartment about the frequency with which
people visited the apartment and left shortly after arriving, expert testi-
mony suggesting that the defendant's frequent use of rental cars prior
to his arrest fit the typical pattern of someone engaged in the sale of
narcotics, and alerts by a police dog indicating that there was a residual
odor of narcotics coming from the trunk and on the door of the defen-
dant's rental car; moreover, although R's brief testimony was not cumula-
tive of other evidence and did not conflict with any other evidence
presented, R acknowledged that the defendant may have had unreported
income from sources other than drug sales, and defense counsel had
the opportunity to perform a thorough cross-examination of R; further-
more, the fact that R's testimony may have supported P's testimony that

the defendant had sold narcotics in light of P's agreement with the state to receive a limited sentence in exchange for his testimony against the defendant did not render the admission of R's testimony harmful, as other evidence presented by the state served to bolster P's testimony, and it was well within the jury's province to find P's testimony credible notwithstanding his cooperation agreement with the state; in addition, the prosecutor referenced R's testimony only once and briefly, during his initial closing argument to the jury, and not at all during rebuttal argument; accordingly, when considered together with other evidence admitted at the defendant's trial, evidence of the defendant's lack of reportable wages in the year of and year prior to his arrest did not substantially affect the jury's verdict.

Argued April 28—officially released August 16, 2022

*Procedural History*

Two part substitute information charging the defendant, in the first part, with two counts of the crime of possession of narcotics with intent to sell and with one count of the crime of conspiracy to sell narcotics, and, in the second part, with having previously been convicted of the crime of sale of narcotics, brought to the Superior Court in the judicial district of Litchfield, where the first part of the information was tried to the jury before *Danaher, J.*; verdict of guilty; thereafter, the defendant was presented to the court, *Danaher, J.*, on a plea of guilty to the second part of the information; judgment of guilty in accordance with the verdict and plea, from which the defendant appealed to the Appellate Court, *Bright, C. J.*, and *Suarez* and *Lavery, Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Robert L. O'Brien*, assigned counsel, with whom, on the brief, was *Christopher Y. Duby*, assigned counsel, for the appellant (defendant).

*Linda Frances Rubertone*, senior assistant state's attorney, with whom, on the brief, were *David R. Shannon*, state's attorney, and *Dawn Gallo*, former state's attorney, for the appellee (state).

*Opinion*

MULLINS, J. In this certified appeal, the defendant, Muhammad A. Qayyum, appeals from his conviction of one count of conspiracy to sell narcotics in violation of General Statutes § 53a-48 and General Statutes (Rev. to 2017) § 21a-277 (a),[1] and two counts of possession of narcotics with intent to sell in violation of § 21a-277 (a). On appeal, the defendant asserts that the Appellate Court improperly affirmed the judgment of the trial court because the trial court improperly admitted (1) expert testimony regarding the defendant's intent to sell narcotics, and (2) evidence that the defendant had no reportable wages on record with the Connecticut Department of Labor (department) in 2016 and 2017. We reject both of these claims and, accordingly, affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following facts that the jury reasonably could have found. See *State* v. *Qayyum*, 201 Conn. App. 864, 866–67, 875, 242 A.3d 500 (2020). "On April 12, 2017, Torrington Police Officer Matthew Faulkner went to 356 Migeon Avenue in Torrington to execute a search warrant following his investigation regarding possible drug sales being conducted from unit 1 North, the apartment of Oscar Pugh. Officer Faulkner surveilled the residence for approximately one hour. During that time, two people separately arrived at Pugh's apartment but departed quickly. Officer Faulkner also saw the defendant arrive in a dark gray Infiniti sedan bearing Massachusetts license plates, which the defendant had rented from [the] Hertz [car rental company]. The defendant had rented cars from Hertz for sixty-three days during the period from January, 2017, until his arrest in April, 2017, [and the total cost of the rentals was] between $2500 and $2600. Officer Faulkner frequently had observed the defendant at Pugh's apartment over these preceding months.

"Additional police arrived approximately one hour after Officer Faulkner began his surveillance [on April 12, 2017]. The police executed the search warrant and detained the defendant and Pugh. The defendant eventually admitted that he had narcotics in his front pockets, and Officer Faulkner then proceeded to search them. Inside, he found $267 in small bills, seven wax folds of heroin, and two 'dubs' of crack cocaine.[2] The police did not find any drug paraphernalia on the defendant or in his rental car, but a canine officer alerted [to] the car's trunk and door.

"The police also searched Pugh. They found six wax folds of heroin and $2 in his pockets and a single dub of crack cocaine in his sock. They also found seventeen dubs of crack cocaine in between the couch cushions where Pugh was seated, along with various items of drug paraphernalia, such as crack pipes and cut straws.

Additionally, they found a handwritten ledger documenting narcotics sales. Pugh admitted that the narcotics found on his person were his and that he was a heavy user, but he denied that the other narcotics in the apartment belonged to him." (Footnote in original.) Id., 866–67. Pugh explained that he had an arrangement with the defendant, in which he allowed the defendant to sell drugs in and from Pugh's apartment and, in exchange, Pugh received drugs at a discounted rate. "Other than the $2 found on Pugh's person, the police did not find any . . . money [in] the apartment." Id., 867.

"The defendant was [arrested and] charged by way of a substitute long form information with one count of conspiracy to sell narcotics in violation of §§ 53a-48 and 21a-277 (a) and two counts of possession of narcotics with intent to sell in violation of § 21a-277 (a). The defendant also was charged in a part B information with having twice been convicted of the sale of narcotics in violation of § 21a-277 (a). The defendant pleaded not guilty and elected to be tried by a jury." Id.

The jury found the defendant guilty of all three counts of the long form information. After the jury returned its verdict, the defendant pleaded guilty, under the part B information, to having twice been previously convicted for the sale of narcotics, thus increasing his maximum sentencing exposure under § 21a-277 (a). Thereafter, "the [trial] court sentenced the defendant to a total effective term of twenty years of incarceration, execution suspended after twelve years, with five years of probation." Id. The Appellate Court affirmed the judgment of the trial court. Id., 881. This appeal followed.[3]

I

We first address the defendant's claim that the Appellate Court incorrectly concluded that the trial court had not abused its discretion by permitting expert testimony regarding the defendant's intent to sell narcotics. More specifically, the defendant claims that the testimony of Scott Flockhart, a detective with the New Milford Police Department, invaded the jury's province as fact finder because Flockhart was allowed to offer improper opinion testimony regarding whether the defendant intended to sell the drugs that were in his pocket at the time of his arrest. The state responds that the testimony was permissible because it addressed only "the general behavior of drug users and drug traffickers." Id., 879–80. The state relies on *State* v. *Nelson*, 17 Conn. App. 556, 555 A.2d 426 (1989), contending that, "[although] it is improper to solicit a particularized opinion as to the defendant's use and possession of items or drugs found . . . it is wholly appropriate to inquire into the custom and practice of narcotics traffickers generally." Id., 566. Because we conclude that this claim was not properly preserved, we decline to review it.

The following facts are relevant to the defendant's claim. During trial, the state presented the expert testimony of Flockhart, who testified that he had extensive experience, throughout his career, dealing with narcotics. Flockhart testified that people who traffic narcotics frequently use rental cars to avoid detection. He also testified that people who traffic narcotics often enlist intermediaries in an effort "to insulate themselves from the actual criminal activity." The prosecutor then asked Flockhart the following hypothetical question: "[I]f you came across a person with two $20 bags of crack [cocaine] and seven bags of heroin . . . would you be able to say whether that person possessed those drugs to use or possessed them with the intent to sell them?" Defense counsel objected to this question on the ground that it went to the ultimate issue. The trial court excused the jury to address this objection.

Outside the presence of the jury, defense counsel argued that the "hypothetical mirrors the facts of the case so closely that, essentially, the witness [was] being asked to give an opinion on the ultimate issue in this case." The trial court stated that the question, as phrased, "[came] too close to asking this expert as to whether he ha[d] an opinion as to whether someone who's exactly situated like [the] defendant was engaged in possession of narcotics with intent to sell." The court sustained the objection and cautioned the prosecutor to "[ask] the questions in a more general way . . . ."

Thereafter, with the jury present and in accordance with the trial court's ruling, the prosecutor asked Flockhart a series of questions regarding what factors an officer looks for when deciding to charge a person with possession of narcotics with the intent to sell.[4] Defense counsel did not object to any of those questions.

Following cross-examination, the prosecutor elicited additional testimony from Flockhart, in which he testified that he does not focus on a single factor when deciding whether to charge a person with possession of narcotics with intent to sell but, rather, looks at all the factors in the aggregate.

In addressing the defendant's claim that the trial court improperly admitted Flockhart's testimony, the Appellate Court pointed out that, at trial, defense counsel had objected only to the prosecutor's hypothetical question regarding the significance of a person holding the exact amount of drugs with which the police apprehended the defendant and whether those circumstances would indicate an intent to sell drugs. See *State* v. *Qayyum*, supra, 201 Conn. App. 879 n.3. The Appellate Court noted that the trial court had sustained that objection and then instructed the prosecutor to ask his questions in a more general way. See id. Defense counsel did not object to the reformulated set of questions that the prosecutor asked Flockhart after the trial court sus-

tained defense counsel's objection to the hypothetical. See id. As a result, the Appellate Court noted, the defendant's claim concerning Flockhart's testimony following defense counsel's objection was unpreserved. Id.

Notwithstanding that observation, the Appellate Court also addressed the merits of that unpreserved claim and concluded that the trial court did not abuse its discretion because Flockhart "never expressed his opinion on the ultimate issue before the jury, namely, whether the defendant intended to sell narcotics." Id., 880. Without reaching the merits, we agree with the Appellate Court that the defendant did not preserve this evidentiary claim[5] at trial.

"In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose, in order to form an adequate basis for a reviewable ruling." (Internal quotation marks omitted.) *State* v. *Cabral*, 275 Conn. 514, 530–31, 881 A.2d 247, cert. denied, 546 U.S. 1048, 126 S. Ct. 773, 163 L. Ed. 2d 600 (2005); accord *State* v. *Gonzalez*, 272 Conn. 515, 539, 864 A.2d 847 (2005). "These requirements are not simply formalities. They serve to alert the trial court to potential error while there is still time for the court to act. . . . Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Internal quotation marks omitted.) *State* v. *Cabral*, supra, 531; accord *State* v. *Gonzalez*, supra, 540.

Thus, "[a]ppellate review of evidentiary rulings is ordinarily limited to the specific legal issue raised by the objection of trial counsel." (Internal quotation marks omitted.) *State* v. *Duteau*, 68 Conn. App. 248, 256, 791 A.2d 591, cert. denied, 260 Conn. 939, 835 A.2d 58 (2002). "[T]he determination of whether a claim has been properly preserved will depend on a careful review of the record to ascertain whether the claim on appeal was articulated [before the trial court] with sufficient clarity to place the trial court on reasonable notice of that very same claim." *State* v. *Jorge P.*, 308 Conn. 740, 754, 66 A.3d 869 (2013).

In reviewing the defendant's claim, we note that, although defense counsel objected to the prosecutor's hypothetical question, defense counsel failed to object to any of the questions that form the basis of the defendant's claim on appeal.[6] It is well established that defense counsel's objection to one question on a specific ground does not necessarily equate to an objection to another related question later. See, e.g., *Dept. of Social Services* v. *Freeman*, 197 Conn. App. 281, 296, 232 A.3d 27 ("[a]n objection to a question on a specific ground is not an objection to a similar question later" (internal quotation marks omitted)), cert. denied, 335

Conn. 922, 233 A.3d 1090 (2020). Thus, the trial court was never presented with and never ruled on the claim regarding the prosecutor's questions to Flockhart about the general behavior of drug dealers that the defendant now raises on appeal. Consequently, defense counsel's failure to object to those questions necessarily means that he did not articulate his claim regarding those questions with sufficient clarity to put the trial court on notice. As a result, we conclude that the defendant failed to preserve this evidentiary claim, and, therefore, we do not review it.

II

The defendant next claims that the Appellate Court incorrectly concluded that the trial court had not abused its discretion when it allowed the state to present evidence of the defendant's lack of reportable wages in 2016 and 2017. Specifically, he argues that the evidence was not relevant to any material issue and that the prejudicial effect outweighed its probative value because it suggested that he had to earn a living selling drugs. In response, the state asserts that the trial court did not abuse its discretion in determining that the probative value of the evidence of the defendant's lack of reportable wages was not outweighed by its prejudicial effect. Furthermore, the state argues that, even if it was an error for the trial court to have admitted this evidence, the error was harmless. For the reasons that follow, we conclude that, even if we assume, without deciding, that the trial court abused its discretion in admitting evidence of the defendant's lack of reportable wages in 2016 and 2017, any error was harmless.[7]

The following additional facts are necessary to our consideration of this claim. After the first day of evidence, the prosecutor informed the trial court that he intended to call David Ricciuti, a programs and services coordinator in the department, to testify that the defendant had no reportable wages in 2016 and 2017. The prosecutor relied on *State* v. *Perry*, 58 Conn. App. 65, 751 A.2d 843, cert. denied, 254 Conn. 914, 759 A.2d 508 (2000), which held that "[f]inancial condition and employment status may be relevant to a defendant's motive to commit a crime and, thus, are admissible on purely nonconstitutional evidentiary grounds." Id., 69.

Defense counsel objected to the state's anticipated presentation of testimony from Ricciuti. Specifically, defense counsel objected that the evidence was irrelevant and unduly prejudicial because it might "play on certain biases that people hold, implicit biases as well." Before the trial court, defense counsel acknowledged that it was an evidentiary objection.[8] Defense counsel asserted that suggesting that someone is more likely to commit a crime because that person does not have a job "fits into a stereotype and . . . runs the risk of arousing the [jurors'] potential prejudices and implicit biases . . . ."

In response to defense counsel's argument that this evidence was more prejudicial than probative, the prosecutor argued that, when viewed in conjunction with other evidence, the probative value of the evidence outweighed any prejudicial effect. In particular, the prosecutor argued that, in light of the other evidence, such as the $267 found in the defendant's pockets with the narcotics at the time of his arrest and the thousands of dollars he spent on rental cars in the couple of months leading up to his arrest, Ricciuti's testimony that the defendant did not have reportable wages for that time period would permit the jury to infer that this money came from drug trafficking because there was no other explanation for the money. The trial court overruled defense counsel's objection, reasoning that Ricciuti's testimony was "not simply evidence . . . that the defendant does not have great resources. It's . . . evidence that he doesn't have a visible source of income . . . and yet he has funds to expend."

On direct examination, Ricciuti testified that the defendant did not report any wages to the department in either 2016 or 2017. Ricciuti acknowledged, however, that some people have "under the table jobs," for which the department would have no record. He also conceded, during cross-examination, that income from self-owned businesses, Social Security disability benefits, rental properties, inheritance and lottery winnings are not reportable wages.

During closing argument, defense counsel argued that the state did not present "testimony that [it had] checked to see if [the defendant] had other sources of income," such as unreported income from "Social Security disability [benefits], rental properties, inheritance, [or lottery winnings]." Defense counsel asked the jury to reject the assumption that "[the defendant] must be a drug dealer . . . [just] because the department . . . show[ed] that he doesn't have a job with reported income" and referenced numerous legitimate forms of income that would not need to be reported to the department.

During the prosecutor's initial closing argument, he mentioned Ricciuti's testimony once, stating that "[the defendant had] $267 . . . in his pocket, the defendant has spent around $2600 in the four month period leading up to this arrest in rental car fees, and no verifiable source—I'm sorry, no reportable wages with the . . . department . . . ." The prosecutor did not mention this evidence at all during his rebuttal closing argument.

The Appellate Court affirmed the judgment of the trial court. *State* v. *Qayyum*, supra, 201 Conn. App. 881. The Appellate Court concluded that the evidence was relevant because "[t]he fact that the defendant had access to money despite having no reportable wages, combined with the other evidence presented by the

state, makes it more likely that he was engaged in drug trafficking to procure that money." Id., 873. Further, the Appellate Court determined that the evidence was not unduly prejudicial because it did not improperly arouse the emotions of the jurors. Id., 873–74. Finally, the Appellate Court concluded that, "although it was not an abuse of discretion to admit Ricciuti's testimony . . . such admission was not harmful." Id., 874. After reviewing the record in the present case, we agree with the Appellate Court that the admission of the evidence was not harmful.

When we review an evidentiary claim, our standard of review is clear. "Unless an evidentiary ruling involves a clear misconception of the law, the [t]rial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . ." (Internal quotation marks omitted.) *State* v. *St. John*, 282 Conn. 260, 270, 919 A.2d 452 (2007).

"[I]n order to establish reversible error on an evidentiary impropriety, the defendant must prove both an abuse of discretion and a harm that resulted from such abuse." *State* v. *Kirsch*, 263 Conn. 390, 412, 820 A.2d 236 (2003). "[W]hether [an improper ruling] is harmless in a particular case depends [on] a number of factors, such as the importance of the witness' testimony in the [defendant's] case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case. . . . Most importantly, we must examine the impact of the . . . evidence on the trier of fact and the result of the trial. . . . [T]he proper standard for determining whether an erroneous evidentiary ruling is harmless should be whether the jury's verdict was substantially swayed by the error." (Internal quotation marks omitted.) *State* v. *Fernando V.*, 331 Conn. 201, 215, 202 A.3d 350 (2019); see also, e.g., *State* v. *Favoccia*, 306 Conn. 770, 809, 51 A.3d 1002 (2012) ("a nonconstitutional error is harmless when an appellate court has a fair assurance that the error did not substantially affect the verdict" (internal quotation marks omitted)).

We consider each of these factors. First, Ricciuti's testimony, when considered with other evidence, was a relatively unimportant aspect of the state's case. We agree with the Appellate Court's conclusion that the state's case against the defendant was quite strong. See *State* v. *Qayyum*, supra, 201 Conn. App. 875. The state introduced physical evidence that the police obtained from the defendant's person when they executed the

search warrant. Specifically, the police recovered $267 in small bills, seven wax folds of heroin, and two dubs of crack cocaine from the defendant's person. Flockhart testified that an individual engaged in the sale of narcotics will often break down narcotics into smaller packages and use intermediaries to make distribution easier.

In addition, the police recovered other narcotics hidden throughout Pugh's apartment and a narcotics ledger in the apartment, displaying numbers and dates. Consistent therewith, Pugh testified extensively about an arrangement he had with the defendant, whereby the defendant would sell drugs in and from Pugh's apartment and, in exchange, Pugh received drugs at a discounted rate. This, too, was consistent with the evidence the jury heard from Faulkner, an officer with the Torrington Police Department, who testified that, over several months, he had personally observed the defendant's frequent presence at Pugh's apartment. Faulkner also testified that he frequently witnessed people arrive at Pugh's apartment and leave quickly thereafter.

The state also presented expert evidence from Flockhart that it is "typical for someone engaged in [the sale of narcotics] to rent a car or have a vehicle registered in another person's name in order to . . . not be detected by law enforcement." The jury heard that this pattern fit the defendant's behavior. Indeed, the state presented testimony from a Hertz rental car representative, who testified that the defendant spent between $2500 and $2600 on rental cars over a four month span prior to his arrest. Additionally, at the time of the defendant's arrest, a canine officer, Remi, and his Torrington Police Department handler performed a sweep of the vehicle. Remi alerted twice and indicated that there was a residual odor of narcotics from the trunk and on the door of the defendant's rental car. Although the police discovered no drug paraphernalia on the defendant or in his rental car, Flockhart explained to the jury that those who are drug users usually have drug paraphernalia with them. This was consistent with Pugh's testimony that the defendant would frequently transport drugs to Pugh's apartment but that he never saw the defendant use heroin or crack cocaine. The alerts by Remi and the lack of drug paraphernalia provided the jury with additional bases to conclude that the defendant was engaged in selling drugs. Therefore, even without Rucciuti's testimony, the state introduced sufficient physical evidence, witness testimony and expert testimony to allow the jury to conclude that the defendant intended to sell the narcotics found on his person. Accordingly, Ricciuti's testimony was of limited importance to the state's case.

Second, we consider whether the disputed evidence was cumulative of other evidence. The defendant only challenges Ricciuti's answer to the following question by the prosecutor: "[F]or 2016 and 2017, did [the defen-

dant] have any reportable wages?" Although the disputed evidence was not cumulative of other evidence and did not conflict with any other evidence presented, it was brief, and Ricciuti testified that the defendant did not report any wages to the department in either 2016 or 2017. On direct examination, Ricciuti acknowledged that some people have "under the table" jobs, the wages for which are not reported to the state.

Third, we consider the extent of cross-examination that was allowed. Defense counsel was able to perform a thorough cross-examination of Ricciuti. In fact, on cross-examination, Ricciuti conceded that, just because there is no reported income, it does not mean that the defendant had no income. Ricciuti also admitted on cross-examination that someone could earn unreported income through self-owned businesses, Social Security disability benefits, rental properties, inheritance or lottery winnings. In the present case, defense counsel had ample opportunity to cross-examine Ricciuti, and counsel was not prevented from asking any questions on cross-examination.

On appeal, the defendant contends that Pugh's testimony was compromised because he had an agreement with the state to receive a limited sentence in exchange for his guilty plea and testimony at trial. He argues that, as a result, the admission of Ricciuti's testimony was not harmless because it supported Pugh's testimony that the defendant sold narcotics. We disagree.

At trial, the state disclosed Pugh's written agreement to provide truthful sworn testimony—under the penalty of perjury—and to plead guilty to the sale of narcotics. The agreement stated that Pugh would thereafter receive a limited sentence, at the discretion of a sentencing judge. The trial court also instructed the jury that, "[i]n weighing the testimony of an accomplice who has not yet been sentenced . . . keep in mind that he may, in his own mind, be looking for some favorable treatment in the sentence . . . [and] [t]herefore . . . look with particular care at the testimony of an accomplice and scrutinize it very carefully before you accept it."

First, Pugh's testimony was consistent with other evidence presented by the state, which bolstered its credibility. Indeed, the fact that the police found $267 in small bills, seven wax folds of heroin, two dubs of crack cocaine, and no drug paraphernalia on the defendant's person is consistent with Pugh's testimony that the defendant was engaged in the sale of narcotics. Furthermore, Pugh's testimony that he and the defendant had an arrangement whereby the defendant would sell drugs out of Pugh's apartment was also bolstered by Faulkner's testimony that he often saw the defendant at Pugh's apartment and that people would stop by the apartment, stay for a short amount of time and leave. Therefore, even without Ricciuti's testimony, other evidence presented by the state served to bolster Pugh's

testimony.

Second, even though we acknowledge that the fact that Pugh had an agreement with the state may have caused some jurors to question his credibility, assessing witness credibility is solely the function of the jury; see, e.g., *State* v. *Michael T.*, 194 Conn. App. 598, 621, 222 A.3d 105 (2019), cert. denied, 335 Conn. 982, 242 A.3d 104 (2020); and it was well within the jury's province to find Pugh's testimony credible even if he had a cooperation agreement with the state.

Third, although Ricciuti's testimony may have related to the ultimate issue in the case, it was not testimony directed at Pugh's credibility or even his testimony. Accordingly, even if Pugh's statement was slightly more likely to be true because of Ricciuti's testimony, the defendant still has not satisfied his burden of proving that the jury would have been substantially swayed by Ricciuti's testimony to reach a different verdict. This is especially so in the present case, in which other independent evidence also supported Pugh's testimony.

The defendant asserts that "[t]he state cannot argue that the lack of reported wages was both relevant and, somehow, did not contribute to the verdict." The defendant applies the wrong analysis. Under harmless error review of an evidentiary claim, evidence improperly admitted is not harmful merely because it is relevant or might possibly have contributed to the verdict. Instead, the defendant must prove that it substantially affected the jury's verdict. See, e.g., *State* v. *Fernando V.*, supra, 331 Conn. 215; *State* v. *Favoccia*, supra, 306 Conn. 809.

As we explained previously in this opinion, the state had a strong case against the defendant, and the evidence of no reportable wages in 2016 and 2017 was not central to the case. Indeed, the prosecutor mentioned that evidence only once, briefly, in his initial closing argument and not at all during his rebuttal argument. The state proved the defendant's intent to sell by a multitude of evidence, including physical evidence, witness testimony, and expert testimony. When considered together with other evidence, evidence of the defendant's lack of reportable wages for the limited period of 2016 to 2017 did not substantially affect the jury's verdict. Accordingly, we conclude that, even if we were to assume, without deciding, that the trial court improperly had admitted the evidence regarding the defendant's lack of reportable wages, the defendant did not satisfy his burden of demonstrating that it substantially swayed the jury's verdict. Therefore, we reject the defendant's claim.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] Hereinafter, all references to § 21a-277 in this opinion are to the 2017 revision of the statute.

[2] "Officer Faulkner testified at trial that a 'dub' is a piece of crack cocaine

weighing 0.2 grams." *State* v. *Qayyum*, supra, 201 Conn. App. 866 n.1.

[3] We granted the defendant's petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court correctly conclude that the trial court had properly admitted evidence of the defendant's lack of income?" And (2) "[d]id the Appellate Court correctly conclude that the trial court had not abused its discretion in permitting expert testimony regarding the defendant's intent to sell narcotics?" *State* v. *Qayyum*, 336 Conn. 911, 244 A.3d 562 (2021).

[4] The following is the relevant portion of the colloquy at trial between the prosecutor and Flockhart:

"[The Prosecutor]: What type of factors do you look for, what type of things do you consider [when deciding whether to charge a person with possession of narcotics with intent to sell] . . . .

"[Flockhart]: We look [at] how the drugs are packaged . . . [and] quantities. . . . [We] look for paraphernalia. If [somebody is] an addict, they're most likely gonna have some type of paraphernalia on them.

"[The Prosecutor]: Okay. Well, in your experience, do addicts generally, are they . . . ever far from their paraphernalia?

"[Flockhart]: Usually not, no.

"[The Prosecutor]: In regards to how it's packaged, what are you looking for, specifically?

"[Flockhart]: Whether it's . . . broken down . . . [into] smaller quantities in smaller bags.

"[The Prosecutor]: Smaller quantities would mean what, in regards to that decision-making process?

"[Flockhart]: Would lead [toward] the possession with the intent to sell, because that's usually how it's broken up for street level distribution.

"[The Prosecutor]: What else would you look for?

"[Flockhart]: You would take a look at . . . [the person's] hygiene . . . track marks on their arms . . . [and] if they're gonna be getting dope sick.

* * *

"[The Prosecutor]: What about money, is that a consideration at all?

"[Flockhart]: Yes.

"[The Prosecutor]: Could you tell the jury how that would weigh in?

"[Flockhart]: Most addicts, when they go to buy . . . their drug of choice . . . usually [they] . . . go with an amount of money to buy a certain amount of that drug . . . if they have $100 on [them], they aren't gonna go and buy just $20 worth. . . .

"[The Prosecutor]: Yes or no—well, if you found a large amount of money on a person versus a negligible amount of money, how would that factor into your decision? . . .

"[Flockhart]: Most addicts aren't gonna have a large amount of money. . . .

"[The Prosecutor]: And what about the denominations of money, would that factor into your decision at all? . . .

"[Flockhart]: Yes."

[5] The Appellate Court concluded, and the defendant concedes, that his claim regarding Flockhart's expert testimony is evidentiary in nature. *State* v. *Qayyum*, supra, 201 Conn. App. 879 n.3. "Although a defendant is entitled to review of unpreserved errors of constitutional magnitude under [*State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015)], the defendant makes no claim that the admission of the testimony that he challenges on appeal rises to the level of a constitutional violation." (Emphasis omitted.) *State* v. *Gonzalez*, 272 Conn. 515, 540, 864 A.2d 847 (2005).

[6] During oral argument before this court, the defendant's appellate counsel was asked what question in particular crossed a line. The defendant's counsel responded that "it was questions that elicited the answers . . . regarding the charging decision that a police officer would come to . . . [but that he did not] know if there was a particular question that . . . crossed the line, so much as the entire line of questioning . . . ." But, again, there was no objection during trial to the line of questioning regarding charging decisions that is now the subject of this appeal.

[7] Because we resolve this appeal on the ground that any error in admitting evidence of the defendant's lack of reportable wages was harmless, we express no opinion on whether the Appellate Court correctly concluded that "the trial court acted within its discretion when it admitted Ricciuti's testimony concerning the defendant's lack of reportable wages" in 2016 and 2017. *State* v. *Qayyum*, supra, 201 Conn. App. 874.

[8] In his brief to this court, the defendant asserts that this claim is of

constitutional significance because it shifts the burden to the defendant to rebut the evidence. We agree with the Appellate Court that the claim is not constitutional in nature; *State* v. *Qayyum*, supra, 201 Conn. App. 872 n.2; and, therefore, fails under the second prong of *State* v. *Golding*, 213 Conn. 233, 239, 567 A.2d 823 (1989).

––––––––––––––––––––––––––––